UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*St. Tammany Fire Protection District No. 1, Louisiana v. Amerisourcebergen Drug Corp., et al.*<br><br>Case No. 1:18-op-46252 | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster<br><br>**SHORT FORM FOR SUPPLEMENTING COMPLAINT AND AMENDING DEFENDANTS AND JURY DEMAND** |

Plaintiff submits this supplemental pleading and Amended Complaint incorporating as if fully set forth herein its own prior pleadings and, if indicated below, the common factual allegations identified and the RICO causes of action included in the Corrected Second Amended Complaint and Jury Demand in the case of *The County of Summit, Ohio, et al., v. Purdue Pharma L.P., et al.,* Case No. 1:18-op-45090 ("*Summit County* Pleadings"), *In Re National Prescription Opiate Litigation,* in the United States District Court for the Northern District of Ohio, Dkt #513, 514[1]), and as may be amended in the future, and any additional claims asserted herein. Plaintiff also hereby amends its complaint to alter the defendants against which claims are asserted as identified below. To the extent defendants were previously sued in plaintiff(s)' existing complaint and they are no longer identified as defendants herein, they have been dismissed without prejudice except as limited by CMO-1, Section 6(e). Doc. #232.

---

[1] Docket #513 is the redacted Summit Second Amended Complaint and Docket #514 is the unredacted Summit Corrected Second Amended Complaint filed under seal in Case No. 1:17-md-02804-DAP. The redacted Summit Corrected Second Amended Complaint is also filed in its individual docket, Case No. 1:18-op-45090-DAP, Docket #24.

## INCORPORATION BY REFERENCE OF EXISTING COMPLAINT

1.      Plaintiff's Existing Complaint (No. 3:18-cv-00968, M.D. La., Dkt. 1) and (1:18-op-46252, Dkt. 1) is expressly incorporated by reference to this Short Form as if fully set forth herein except to the extent that allegations regarding certain defendants that are not listed in section 2 below are dismissed without prejudice.

## PARTIES – DEFENDANTS

2.      Having reviewed the relevant ARCOS data, Plaintiff asserts claims against the following Defendants:

AMERISOURCEBERGEN DRUG CORPORATION, CARDINAL HEALTH, INC., McKESSON CORPORATION, PURDUE PHARMA L.P., PURDUE PHARMA, INC. THE PURDUE FREDERICK COMPANY, INC., TEVA PHARMACEUTICAL INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC. CEPHALON, INC., JOHNSON & JOHNSON, JANSSEN PHARMACEUTICALS, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICA INC. n/k/a JANSSEN PHARMACEUTICALS, INC., NORAMCO INC., ENDO HEALTH SOLUTIONS INC., ENDO PHARMACEUTICALS, INC., PAR PHARMACEUTICALS, INC., ALLERGAN PLC f/k/a ACTAVIS PLC., WATSON PHARMACEUTICALS, INC. n/k/a ) ACTAVIS, INC., WATSON LABORATORIES, INC., ACTAVIS LLC., ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC., MALLINCKRODT PLC., MALLINCKRODT LLC, CVS HEALTH CORPORATION, WALGREENS BOOTS ALLIANCE, INC., a/k/a WALGREEN CO., WALMART, INC., f/k/a WALMART STORES, INC. AND RITE AID OF MARYLAND, INC. a/k/a RITE-AID CORPORATION.

**I, Michael G. Stag, Counsel for Plaintiff, certify that in identifying all Defendants, I have followed the procedure approved by the Court and reviewed the ARCOS data that I understand to be relevant to Plaintiff.**

**I further certify that, except as set forth below, each of the Defendant(s) newly added herein appears in the ARCOS data I reviewed.**

**I understand that for each newly added Defendant not appearing in the ARCOS data I must set forth below factual allegations sufficient to state a claim against any such newly named Defendant that does not appear in the ARCOS data.**

**The following newly added Defendant(s) *do not appear* in the ARCOS data I reviewed:**

**Dated:** March 16, 2019        **Signed:** /s/ Michael G. Stag

Factual Allegations Regarding Individual Defendants

Defendants CVS Health Corporation, Rite Aid of Maryland, Inc., Walgreens Boots Alliance, Inc., a/k/a Walgreen Co., and Wal-Mart Inc., are hereby added as Defendants by this pleading based on the following jurisdictional allegations:

2.1.    Defendant CVS Health Corporation ("CVS") is a Delaware corporation with its principal place of business in Rhode Island. CVS Health Corporation conducted business as a licensed wholesale distributor under the following named business entities: CVS Indiana, LLC.; CVS Orlando FL Distribution; CVS Pharmacy, Inc.; CVS RX Services, Inc., d/b/a CVS Pharmacy Distribution Center; CVS TN Distribution, LLC; CVS VERO FL Distribution, LLC; CVS 5282 LA LLC; CVS 5374 LA, LLC; CVS 5469, LLC; CVS Revco D.S., Inc.; Louisiana CVS Pharmacy LLC (collectively "CVS"). At times material, CVS, through its various DEA registered subsidiaries and affiliated entities, conducted business as a licensed wholesale distributor, including in Louisiana. At times material, CVS distributed prescription opioids throughout the United States, including in or about Louisiana, St. Tammany Parish, and St. Tammany Fire Protection District No.1 and surrounding areas.

2.2.    Defendant Rite Aid of Maryland, Inc. ("Rite Aid") is a Delaware corporation with its principal office located in Camp Hill, Pennsylvania. Rite Aid conducted business under the following named business entities: Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center Inc.; Rite Aid Corporation; Rite Aid of Pennsylvania, Inc.; Rite Aid Headquarters Corporation; K&B Louisiana Corporation as successor in interest to Katz & Besthoff (collectively "Rite Aid"). At times material, Rite Aid, through its various DEA

3

registered subsidiaries and affiliated entities, conducted business as a licensed wholesale distributor. At times material, Rite Aid distributed prescription opioids throughout the United States, including in or about Louisiana, St. Tammany Parish, and St. Tammany Fire Protection District No.1 and surrounding areas.

2.3. Defendant Walgreens Boots Alliance, Inc., also known as Walgreen Co. ("Walgreens") is a Delaware corporation with its principal place of business in Illinois. Walgreens Boots Alliance Inc. conducted business as a licensed wholesale distributor under the following named business entities: Walgreen Co.; Walgreen Eastern Co., Inc.; Walgreen Arizona Drug Co.; Walgreens Mail Service, LLC; Medication Adherence Solutions LLC, formerly Walgreens Long-Term Care Pharmacy, LLC; SeniorMed, LLC; Walgreen Louisiana Co., Inc.; Walgreen Medical Supply LLC; Walgreen Pharmacy Services Midwest, LLC; Walgreen Realty Resources (collectively "Walgreens"). At times material, Walgreens, through its various DEA registered subsidiaries and affiliated entities, conducted business as a licensed wholesale distributor. At times material, Walgreens distributed prescription opioids throughout the United States, including in or about Louisiana, St. Tammany Parish, and St. Tammany Fire Protection District No.1 and surrounding areas.

2.4. Defendant Wal-Mart Inc., formerly known as Wal-Mart Stores, Inc. ("Wal-Mart"), is a Delaware corporation with its principal place of business in Bentonville, Arkansas. Wal-Mart Stores, Inc. conducted business as a licensed wholesale distributor under the following named business entities: Wal-Mart Warehouse #28; Wal-Mart Warehouse #6045 aka Wal-Mart Warehouse #45; Wal-Mart Warehouse # 6046 aka Wal-Mart Warehouse #46; Martin Family Private Holdings, LP (collectively "Wal-Mart"). At times material, Walmart, through its various DEA registered subsidiaries and affiliated entities, conducted business as a licensed wholesale

distributor. At times material, Wal-Mart distributed prescription opioids throughout the United States, including in or about Louisiana, St. Tammany Parish, and St. Tammany Fire Protection District No.1 and surrounding areas.

2.5.    Collectively, Defendants CVS, Rite Aid, Walgreens, and Walmart are referred to as "National Retail Pharmacies."

2.6.    The National Retail Pharmacies earned enormous profits by selling prescription opioids.  They were aware of the oversupply of prescription opioids through the extensive data and information they compiled and maintained as both distributors and dispensaries.

2.7.    The National Retail Pharmacies took no meaningful action to inhibit the sale of excessive amounts of opioids.

2.8.    The National Retail Pharmacies conduct substantial business throughout the United States and the State of Louisiana, including the distribution and dispensing of prescription opioids.

2.9.    The National Retail Pharmacies compiled and maintained extensive data on opioids they distributed and dispensed.  They employed this data to evaluate their own sales and workforce. Through this data, the National Retail Pharmacies knew of patterns and incidents of improper distribution, prescribing, and use of prescription opioids throughout the United States and in Louisiana. The National Retail Pharmacies also compiled data regarding individual doctors and their prescribing practices.

2.10.   The extensive data compiled and maintained by the National Retail Pharmacies could have been employed to help stop diversion of opioids, but they failed to do so.

2.11.   The National Retail Pharmacies had a duty to prevent diversion of prescription opioids into the illegal market by, among other things, monitoring, and reporting suspicious activity.  21 C.F.R. § 1301.11.

2.12.   The National Retail Pharmacies had a duty to "provide effective controls and procedures to guard against theft and diversion of controlled substances." 21 C.F.R. § 1301.71(a); 21 C.F.R. § 1306.04(a).

2.13.   The DEA provided extensive guidance to the National Retail Pharmacies concerning their duties to the public, including how to identify suspicious orders and other evidence of diversion.

2.14.   The National Retail Pharmacies had a duty to identify: orders of unusually large size; orders that were disproportionately large in comparison to the population of a community served by the pharmacy; orders that deviate from a normal pattern; orders of unusual frequency and duration; prescriptions written by a doctor who writes significantly more prescriptions (or in larger quantities or higher doses) for controlled substances compared to other practitioners in the area; prescriptions which should last for a month in legitimate use, but are being refilled on a shorter basis; prescriptions for antagonistic drugs, such as depressants and stimulants, at the same time; prescriptions that look "too good" or where the prescriber's handwriting is too legible; prescriptions with quantities or doses that differ from usual medical usage; prescriptions that do not comply with standard abbreviations and/or contain no abbreviations; photocopied prescriptions; or prescriptions containing different handwriting.

2.15.   The National Retail Pharmacies had a duty to detect other indications of diversion through data gathered, consolidated, and analyzed by the National Retail Pharmacies themselves.

2.16.    The National Retail Pharmacies had a duty to contact the local Board of Pharmacy and DEA upon finding evidence of prescription diversion.

2.17.    The National Retail Pharmacies did not comply with their duties and knowingly permitted widespread diversion of opioids.

2.18.    The National Retail Pharmacies inhibited compliance with their duty to prevent diversion of opioid prescriptions by adopting performance metrics and prescription quotas for their retail stores.

2.19.    The National Retail Pharmacies failed to adequately train their pharmacists and pharmacy technicians on how to properly handle prescriptions for opioids, including in detection of improper prescribing and diversion of opioids.

2.20.    The National Retail Pharmacies failed to adequately employ available data to identify doctors who were writing suspicious volumes of prescriptions and/or prescriptions of suspicious amounts of opioids, or to detect diversion.

2.21.    The National Retail Pharmacies failed to analyze: (a) the number of opioid prescriptions filled by individual pharmacies relative to the population of the pharmacy's community; (b) the increase in opioid sales over time; (c) the number of opioid prescriptions filled relative to other drugs; and (d) the increase in annual opioid sales relative to the increase in annual sales of other drugs.

2.22.    The National Retail Pharmacies failed to conduct adequate internal or external audits of their opioid sales to identify patterns regarding prescriptions.

2.23.    The National Retail Pharmacies failed to effectively respond to concerns raised by their own employees regarding inadequate policies and procedures regarding the filling of opioid prescriptions.

7

2.24.    The National Retail Pharmacies were, or should have been, aware of the excessive quantity of opioids being distributed and dispensed by them.

2.25.    The National Retail Pharmacies knew of their failure to abide by state and federal law and regulations governing the distribution and dispensing of prescription opioids.

2.26.    The National Retail Pharmacies have been repeatedly penalized for their illegal prescription opioid practices.

2.27.    CVS has paid fines in the tens of millions as the result of investigations by the DEA and the United States Department of Justice ("DOJ") regarding improper practices regarding the dispensing of opioids.

2.28.    CVS has been forced to enter into a settlement with the Massachusetts Attorney General wherein CVS agreed to require pharmacy staff to access the state's prescription monitoring program website and review a patient's prescription history before dispensing certain opioid drugs.

2.29.    Walgreens also has been penalized in the tens of millions for violations of the CSA, including violations involving opioids.

2.30.    Walgreens has settled with a number of state attorneys general over the dispensing of opioid prescriptions.

2.31.    Walgreens knowingly failed to meet its duties under the CSA even when Walgreens became aware of dramatic increases in the dispensing of opioids and high numbers of opioids dispensed in proportion to the population.

2.32.    Rite Aid has also been fined millions for violations of the CSA, after multi-jurisdictional investigations by the DOJ, including regarding prescription opioids.

2.33.    State and federal drug diversion prosecutions have involved prescription opioid pills procured from National Retail Pharmacies.

2.34.    The National Retail Pharmacies repeatedly and consistently violated their legal duties under the CSA and other laws and regulations that govern the distribution and dispensing of prescription opioids.

2.35.    The National Retail Pharmacies knew or reasonably should have known about the disproportionate flow of opioids into Louisiana and the operation of "pill mills" that generated opioid prescriptions that, by their quantity or nature, were apparently for illicit supply and diversion. Combined with additional information from news reports, and state and federal regulatory actions, including prosecutions of pill mills in the area, the National Retail Pharmacies knew or should have known that they were abetting the illegal distribution of controlled substances.

2.36.    The National Retail Pharmacies knew or reasonably should have known about the devastating consequences of the oversupply and diversion of prescription opioids, including spiking opioid overdose rates in Louisiana, St. Tammany Parish, and St. Tammany Fire Protection District No.1 and surrounding areas.

2.37.    The National Retail Pharmacies were well aware that their distribution and dispensing activities fell far short of their legal duties.

2.38.    The National Retail Pharmacies' failure to effectively prevent diversion and to monitor, report, and prevent suspicious orders contributed significantly to the opioid crisis by enabling, and failing to prevent, the diversion of opioids.

2.39.    Prescription opioids dispensed by the National Retail Pharmacies migrated between cities, parishes, and states. Prescription data from any particular jurisdiction does not

capture the full scope of the misuse, oversupply and diversion of opioids dispensed by the National Retail Pharmacies in each jurisdiction.

2.40.   The National Retail Pharmacies engaged in actions, as described above, which are unethical, oppressive, unscrupulous, and substantially injurious to Petitioner and to the public.

2.41.   The acts and omissions of the National Retail Pharmacies, as enumerated above, constitute unfair or deceptive acts or practices in the conduct of trade or commerce which have been declared unlawful by Louisiana statutes and jurisprudence.

2.42.   The National Retail Pharmacies' unfair, deceptive, and unconscionable representations, concealments, and omissions were reasonably calculated to deceive the public, Petitioner's Community, and Petitioner.

2.43.   The National Retail Pharmacies unfair trade practices specifically include, but are not necessarily limited to, the following:

(a)     The practice of not monitoring for suspicious orders of prescription opioids;
(b)     The practice of not detecting suspicious orders of prescription opioids;
(c)     The practice of not investigating suspicious orders of prescription opioids;
(d)      The practice of filling, or failing to refuse fulfillment of, suspicious prescriptions for opioids;
(e)     The practice of not reporting suspicious prescriptions for opioids;
(f)     The practice of rewarding increases in prescription opioid sales; and/or
(g)     The practice of falsely misrepresenting to governmental entities and the public that the National Retail Pharmacies were complying with their legal obligations.

2.44.   Because of the dangerously addictive nature of these drugs, the National Retail Pharmacies dispensing practices unlawfully caused the opioid epidemic plaguing Petitioner's community.  The National Retail Pharmacies had a non-delegable duty to guard against and prevent the diversion of prescription opioids.

2.45.   The National Retail Pharmacies are thus in violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et. seq.*

2.46.    Petitioner seeks all remedies available under Louisiana Revised Statutes 51:1401, *et seq.*, including injunctive relief, compensatory damages, applicable civil penalties, treble damages, attorney's fees, and other appropriate relief.

## COMMON FACTUAL ALLEGATIONS

3.    By checking the boxes in this section, Plaintiff hereby incorporates by reference to this document the common factual allegations set forth in the *Summit County* Pleadings as identified in the Court's Order implementing the Short Form procedure.  Dkt. # 1282.

☒  Common Factual Allegations (Paragraphs 130 through 670 and 746 through 813)
☒  RICO Marketing Enterprise Common Factual Allegations  (Paragraphs 814-848)
☒  RICO Supply Chain Enterprise Common Factual Allegations  (Paragraphs 849-877)

4.    If additional claims are alleged below that were not pled in Plaintiff's Existing Complaint (other than the RICO claims asserted herein), the facts supporting those allegations must be pleaded here.  Plaintiff(s) assert(s) the following additional facts to support the claim(s) identified in Paragraph 6 below (below or attached):

Plaintiff incorporates by reference the factual allegations provided above in Paragraph 2 alleging damages against the National Retail Pharmacies pursuant to the Louisiana Unfair Trade Practices Act.

## CLAIMS

5.    The following federal **RICO causes of action** asserted in the *Summit County* Pleadings as identified in the Court's implementing order and any subsequent amendments, Dkt. 1282, are incorporated in this Short Form by reference, in addition to the causes of action already asserted in the Plaintiff(s)'s Existing Complaint (check all that apply):

☒  First Claim for Relief – Violation of RICO, 18 U.S.C. § 1961 *et seq.* – Opioid Marketing Enterprise (Against Defendants Purdue, Cephalon, Janssen, Endo and Mallinckrodt (the "RICO Marketing Defendants")) (*Summit County* Pleadings, Paragraphs 878-905)

☒  Second Claim for Relief – Violation of RICO, 18 U.S.C. § 1961 *et seq.* – Opioid Supply Chain Enterprise (Against Defendants Purdue, Cephalon, Endo, Mallinckrodt, Actavis, McKesson, Cardinal, and AmerisourceBergen (the "RICO Supply Chain Defendants")) (*Summit County* Pleadings, Paragraphs 906-938)

11

6.     Plaintiff asserts the following **additional claims** as indicated (below or attached):

Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et. seq.* against National Retail
Pharmacies

7.     To the extent Plaintiff(s) wish(es) to **dismiss claims** previously asserted in
Plaintiff(s)'s Existing Complaint, they are identified below and will be dismissed without
prejudice.

N/A

WHEREFORE, Plaintiff prays for relief as set forth in the *Summit County* Pleadings in *In
Re National Prescription Opiate Litigation* in the United States District Court for the Northern
District of Ohio, MDL No. 2804 and in Plaintiff's Existing Complaint as has been amended
herein.

Dated: March 16, 2019                    Respectfully submitted:
                                         **STAG LIUZZA, L.L.C.**

                                         */s/ Michael G. Stag*
                                         **MICHAEL G. STAG**, Bar No. 23314
                                         **ASHLEY M. LIUZZA**, Bar No. 34645
                                         **MATTHEW D. ROGENES**, Bar No. 36652
                                         One Canal Place
                                         365 Canal Street, Suite 2850
                                         New Orleans, Louisiana 70130
                                         Telephone: (504) 593-9600
                                         Facsimile: (504) 593-9601
                                         Email:  mstag@stagliuzza.com
                                              aliuzza@stagliuzza.com
                                              mrogenes@stagliuzza.com

                                              -and-

                                         **IRPINO, AVIN & HAWKINS**

                                         */s/ Pearl A. Robertson*
                                         **ANTHONY D. IRPINO,** Bar No. 24727
                                         **PEARL A. ROBERTSON**, Bar No. 34060
                                         2216 Magazine Street
                                         New Orleans, LA 70130

Telephone: (504) 525-1500
Facsimile: (504) 525-1501
E-mail: airpino@irpinolaw.com
         probertson@irpinolaw.com

-and-

**ALVENDIA, KELLY & DEMAREST, LLC**

*/s/Roderick Alvendia*
**RODERICK ALVENDIA**, Bar No. 25554
**J. BART KELLY**, Bar No. 24488
**JEANNE DEMAREST**, Bar No. 23032
909 Poydras Street, Suite 1625
New Orleans, Louisiana 70112
Telephone: (504) 200-0000
Facsimile: (504) 200-0001
Email:  rico@akdlalaw.com
         bart@akdlalaw.com
         jeanne@akdlalaw.com

- and -

**SMITH & FAWER, L.L.C.**

*/s/ Randall A. Smith*
**RANDALL A. SMITH**, Bar No. 2117
**STEPHEN M. GELÉ**, Bar No. 22385
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Fax: (504) 525-2205
Email:  rasmith@smithfawer.com
         sgele@smithfawer.com

- and -

**CHEHARDY, SHERMAN, WILLIAMS,
MURRAY, RECILE, STAKELUM
& HAYES, L.L.P.**

*/s/ James M. Williams*
**JAMES M. WILLIAMS**, Bar No. 26141
1 Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
Telephone: (504) 217-2006

13

Facsimile: (504) 833-8080
Email: JMW@CHEHARDY.COM

- and -

*/s/ John F. Young*

**JOHN F. YOUNG**, Bar No.: 01659
609 Metairie Road, # 300
Metairie, La. 70005
Telephone: (504) 352-8855
Email: john@johnyoungla.com

- and -

*/s/ Chad Danenhower*

**CHAD DANENHOWER**, Bar No.: 32845
PMI Legal Services, LLC
212 Park Place
Covington, LA 70433
Telephone: (985) 590-5026
Facsimile: (985) 605-0525
Email: chad.danenhower@danenhowerlaw.com

Attorneys for Plaintiff

14